UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHANA S., Plaintiff, -against- FRANK BISIGNANO, Commissioner Of Social Security, Defendant. | | **RULING & ORDER ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND COMMISSIONER'S MOTION TO AFFIRM DECISION OF COMMISSIONER** 25-CV-971 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Johana S.[1] commenced this action against Frank Bisignano, the Commissioner of Social Security (the "Commissioner"), challenging the Commissioner's determination that Plaintiff does not qualify for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[2]

After considering the submissions, and for the reasons set forth below, the Court **denies** Plaintiff's motion and **grants** the Commissioner's motion.

## I. BACKGROUND

The Court assumes familiarity with Plaintiff's medical history, as summarized in both Plaintiff's Memorandum in Support of her Motion for an Order Reversing the Decision of the

[1] Plaintiff is identified by her first name and last initial pursuant to the District's January 8, 2021, Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan 8, 2021).

[2] *See* Mot. to Reverse Decision of the Comm'r, ECF No. 16; Mot. to Affirm Decision of the Comm'r, ECF No. 23.

Commissioner, Plaintiff's Medical Chronology affixed thereto, and the Commissioner's Memorandum in Support of his Motion for an Order Affirming the Commissioner's Decision.[3] The Court adopts and incorporates both statements of fact by reference.

On August 4, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.[4] She also filed a Title XVI application for supplemental security income ("SSI") on August 4, 2022.[5] In both applications, she alleged a disability beginning on June 15, 2019.[6] The claim was initially denied on January 3, 2023, and upon reconsideration on September 7, 2023.[7] Plaintiff then filed a written request for a hearing, and on March 29, 2024, the ALJ held an in-person hearing.[8] On June 17, 2024, the ALJ issued an unfavorable decision and denied Plaintiff's claim.[9] Plaintiff then submitted a request for review of the hearing decision, which the Appeals Council denied on April 18, 2025.[10] Plaintiff thereafter filed the instant appeal on June 19, 2025.[11]

---

[3] *See* P.'s Mem., ECF Nos. 16-1; Medical Chronology, ECF No. 16-2; D.'s Mem, ECF No. 23.

[4] Certified Administrative Record ("R.") at 11. "R." refers to the Certified Administrative Record filed at ECF No. 14. The Court cites to the pagination on the bottom right-hand corner of the record, as opposed to the CM/ECF pagination.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*; *see also* R. 39–84.

[9] R. 8–32.

[10] R. 33–38.

[11] *See* Compl., ECF No. 1.

## II. LEGAL STANDARD

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (cleaned up). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre*, 758 F.3d at 149 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

To be disabled and thus qualify for benefits, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(I)–(v)[,]" as set forth below:

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

*Schillo*, 31 F.4th at 70. The Commissioner considers whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved to the Social Security Administration ("SSA"), the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicates disability. *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

## III. DISCUSSION

In challenging the ALJ's final decision that Plaintiff was not entitled to DIB or SSI, Plaintiff raises the following arguments: (1) that the ALJ erred in his assessment of Plaintiff's subjective complaints; (2) that the ALJ erred in his assessment of medical opinions; and (3) the ALJ ultimately erred in formulating Plaintiff's residual functioning capacity ("RFC"). For the following reasons, the Court disagrees with each of these arguments.

### A. The ALJ's Rejection of Plaintiff's Substantial Evidence is Supported by Substantial Evidence

Plaintiff first asserts that the ALJ improperly found Plaintiff's "statements about the intensity and persistence of her symptoms 'not entirely consistent' with the evidence."[12] She states that in making this finding, the ALJ "cherry-picked" certain findings—e.g. "short periods of improvement, [a] select normal exam finding . . ., [Plaintiff's previous] part-time work[,] and some [of her] daily activities"[13]—"without a balanced analysis of the full record as required by [Social Security Ruling ("SSR")] 16-3p."[14] Plaintiff also asserts that the ALJ failed to evaluate her symptoms using a set of factors as laid out by SSR 16-3p.[15] The Commissioner, in response, argues that "Plaintiff fails to cite which pertinent factors the ALJ failed to discuss," and that rather than cherry-picking, "the ALJ supportably considered and reconciled the medical and non-medical evidence of record to arrive at an RFC finding consistent with the entire record."[16] The Court agrees with the Commissioner.

At the outset, the Court notes it is Plaintiff who bears the burden of proof at the first four steps of the sequential evaluation, including at steps two and three, "whether the claimant has a severe physical or mental impairment, or combination of severe impairments" and "whether the impairment (or combination) meets or equals the severity of one of the impairments specified in [the Listing of Impairments]. *Schillo*, 31 F. 4th at 70. But as stated by the Commissioner, in alleging that the ALJ failed to evaluate her symptoms using a set of

---

[12] ECF No. 16-1 at 36 (citing to R. 18–19).

[13] *Id.* (cleaned up).

[14] ECF No. 16-1 at 37.

[15] *Id.* at 36–37.

[16] ECF No. 23 at 10, 12.

factors as laid out by SSR 16-3p, Plaintiff fails to identify which exact factors the ALJ failed to discuss. *See* Soc. Sec. Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

Further, SSR 16-3p requires an ALJ to consider a claimant's symptoms and the extent to which such symptoms can be reasonably accepted as consistent with the evidence of record. *Id.* The record here reveals that the ALJ supportably evaluated Plaintiff's subjective complaints of back pain and the extent to which her allegations could be reasonably accepted as consistent with the evidence of record.[17]

Specifically, the Second Circuit has held "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Work activity during the relevant period of review undermines claims of disability, even when the work does not amount to substantial gainful activity. *See Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008).

At the June 2024 ALJ hearing, Plaintiff testified that she has been working part-time at Lowes Home Centers since March 2023.[18] She further testified that throughout 2022, she worked at fast-food restaurant Popeyes. Plaintiff stated that she often took her Popeyes co-workers' shifts and, at times, worked twelve-hour shifts for days per week.[19] Thus, the ALJ

[17] R. 17–18.

[18] R. 47.

[19] R. 46–47.

reasonably found that Plaintiff's performance of part-time work demonstrated that her allegations regarding the intensity, persistence, and functional limitations of her back pain were not entirely consistent with the evidence of record.[20] *See* 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii) (explaining that ALJs are entitled to consider other factors concerning a claimant's functional limitations and restrictions due to pain).

The Court finds Plaintiff's claim that the ALJ "cherry-picked" evidence to discredit her subjective complaints of pain similarly unpersuasive. "The ALJ was entitled to weigh all of the evidence and make an RFC finding that corresponds with the record as a whole." *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021). Moreover, the ALJ had access to the entirety of the medical record, and it was his function to reconcile any evidentiary discrepancies within his discretion. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

Here, as discussed, in determining that Plaintiff's subjective complaints were not entirely consistent with the record, the ALJ relied on other portions of the record: notably, the Plaintiff's previous and contemporaneous part-time work. In other words, the ALJ performed his function of weighing all the evidence and reconciling evidentiary discrepancies within the record, as was within his discretion. Plaintiff's assertion that the ALJ "cherry-picked" portions of the record to reach his determination is thus no more than a disagreement with the ALJ's weighing of the evidence.

[20] R. 17–18.

But the Court may not reweigh the evidence simply because Plaintiff disagrees with the ALJ's evaluation of said evidence. *See Snyder v. Comm'r of Soc. Sec*., No. 22-277, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (summary order) (finding Plaintiff's accusation of cherry-picking evidence was merely a disagreement with the ALJ's weighing of the evidence, which the deferential standard prevents the court from reweighing); *Mario S. v. O'Malley*, No. 23-CV-1207, 2024 WL 4956980, at *4 (N.D.N.Y. Oct. 10, 2024) ("Plaintiff's allegation of cherry-picking should be rejected because crediting it would require a court to re-weigh record evidence, and what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." (cleaned up)); *Wendy L. K. v. Comm'r of Soc. Sec.*, No. 24-CV-241, 2025 WL 1089519, at *5 (N.D.N.Y. Jan. 27, 2025) ("When the ALJ considers a Plaintiff's medical history, testimony, medical opinion evidence, and treatment records in reaching their conclusion of Plaintiff's capability, a plaintiff's characterization of cherry-picking in the decision is unsupported by the record.").

Lastly, Plaintiff asserts that "the ALJ's failure to consider combined effects of [Plaintiff's] obesity with neuropathy is an error under Social Security Ruling 19-2p."[21] *See* Soc. Sec. Ruling 19-2p, Titles II & XVI: Evaluating Cases Involving Obesity, 2019 WL 2374244 (S.S.A. May 20, 2019). Though the ALJ acknowledged Plaintiff's obesity is "severe," Plaintiff contends, he did not sufficiently consider how Plaintiff's obesity "interacts with neuropathy-related and orthopedic-related standing and walking limits."[22]

---

[21] ECF No. 16-1 at 40.

[22] *Id.*

As the Commissioner points out, "[a]n ALJ is not obliged to explicitly address limitations due to obesity where, as here, the RFC determination relied on medical opinions that considered Plaintiff's obesity and she did not allege limitations due to obesity."[23] *See White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) (where "the ALJ did not explicitly discuss how [Plaintiff]'s obesity affected his limitations," ALJ still "implicitly factored [Plaintiff]'s obesity into his RFC determination by relying on medical reports that . . . noted [Plaintiff]'s obesity."); *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) ("the ALJ implicitly factored [Plaintiff's] obesity into his RFC determination by relying on medical reports that repeatedly noted [her] obesity and provided an overall assessment of her work-related limitations"); *see Martin v. Astrue*, No. 5-CV-72, 2008 WL 4186339, *3–4, 11–12 (N.D.N.Y. Sept. 9, 2008) (finding ALJ's failure to explicitly address Plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered Plaintiff's obesity). Thus, the Court rejects Plaintiff's argument that the ALJ failed to consider the combined effects of her obesity with Plaintiff's other afflictions.

"An ALJ's evaluation of a social security claimant's subjective symptoms is entitled to substantial deference by a reviewing court," *Shari L. v. Kijakazi*, No. 20-CV-1266, 2022 WL 561563, at *12 (N.D.N.Y. Feb. 24, 2022) (cleaned up), and "can be reversed only if [it is] patently unreasonable," *Chastity A. v. Kijakazi*, No. 21-CV-551, 2022 WL 1984148, at *5 (N.D.N.Y. June 6, 2022) (cleaned up). Accordingly, the Court finds no error in the ALJ's evaluation of Plaintiff's subjective complaints, defers to that assessment, and rejects Plaintiff's

---

[23] ECF No. 23 at 13 (citing (R. 22, 99, 102, 127, 131, 132, 283).

arguments that the ALJ failed to comply with SSR 16-3p or impermissibly cherry-picked the evidence.

### B. The ALJ's Assessment of Medical Opinions is Supported by Substantial Evidence

Plaintiff next contends that "the ALJ both failed to weigh the opinion evidence of record correctly, and of the numerous medical opinions in the record, the ALJ relied only on the least restrictive and least supported, opinions, and dismissed numerous supported opinions for disallowed reasons."[24] The Commissioner responds that "substantial evidence supports the ALJ's evaluation of the medical opinions of Dr. Drake, registered nurses (RNs) McIntosh and Villar-Leeman, and Dr. Asunto as well as the finding of state agency psychological consultant (SAPC) Dr. Rogers."[25]

Supportability and consistency are the two most important factors an ALJ considers when assessing the persuasiveness of a medical source opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record." *Gary L. v. Comm'r of Soc. Sec.*, 21-CV-1268, 2023 WL 8891437, *4 (W.D.N.Y. Dec. 26, 2023). While a ALJ may not "substitute their lay judgment for a competent medical opinion," *Ramsey v. Comm'r of Soc. Sec.*, 830 Fed. App'x 37, 39 (2d Cir. 2020) (cleaned up), an ALJ may "set aside an opinion that is contradicted by the weight of other record evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 95 (2d Cir. 2022). Here, for the reasons

---

[24] ECF No. 16-1 at 41.

[25] ECF No. 23 at 6 (citing Pl. Mem. at 41–45; R. 21–23).

that follow, the Court finds that the ALJ properly considered supportability and consistency in evaluating the medical opinions in the record.

**1. Dr. Drake**

Plaintiff first takes issue with the ALJ's determination that the medical opinion of Dr. Evan Drake, one of Plaintiff's examining doctors, was "not persuasive."[26] Plaintiff contends that "Dr. Drake's opinion is based on a multiday objective neuropsychological exam, and contains many references to objective test findings," that it "is consistent with the record [and] with the more persuasive opinions, and even with some of the ALJ's own findings," and that the ALJ should thus not have rejected it.[27] The Court disagrees.

First, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the source's opinion, the more persuasive the source's opinions will be. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Here, Dr. Drake's opinion that Plaintiff had a poor ability to do many mental work-related tasks was not supported by his neuropsychological evaluation findings that Plaintiff's intelligence was within the borderline range, and her attention span and memory skills were at least within the low-average-to-borderline range.[28] Accordingly, it was not persuasive.

Further, the more consistent a medical source opinion is with other medical and nonmedical evidence, the more persuasive the medical opinion will be. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Tibbles v. Comm'r Soc. Sec.*, No. 22-1127, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (summary order) (affirming ALJ's assessment of

---

[26] ECF No. 16-1 at 42 (citing R. 21).

[27] *Id.* at 43.

[28] R. 1094–95, 380.

plaintiff's RFC that discounted medical source's opinions because they were "not fully supported by or consistent with the other evidence in the record"); *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (summary order) (the ALJ "may choose between properly submitted medical opinions . . . including the report of a consultative physician") (cleaned up). In Plaintiff's case, the ALJ found Dr. Drake's opinion that Plaintiff had poor mental abilities to be unpersuasive for the additional reason that it was not consistent with the opinion of Dr. Hillbrand, a consultative psychologist, which found that Plaintiff had no more than moderate mental limitations.[29]

Nor was "Dr. Drake's opinion [] consistent with Plaintiff's testimony [or] the SAPCs' finding."[30] As previously laid out, the Plaintiff testified at the June 2024 ALJ hearing that she had been working part-time at Lowes Home Centers since March 2023, and that she had previously worked at Popeyes.[31] Work activity during the relevant period undermines a claim of disability, even when the work does not amount to substantial gainful activity. *See Rivers*, 280 F. App'x at 23 (holding that evidence that the plaintiff worked during the relevant period "support[ed] the ALJ's conclusion that [the plaintiff] had the [RFC] . . . to perform a full range of light work during the relevant periods"). Dr. Drake's opinion also stood in contrast to that of the SAPCs, who are experts in Social Security disability evaluations and determined that Plaintiff had no more than moderate limitations.[32] *See* 20 C.F.R. §§ 404.1513a(b)(1),

---

[29] *Compare* R. 1094–95, *with* R. 3265.

[30] ECF No. 23 at 8 (*comparing* R. 1094–95, *with* R. 103–04, 133–34).

[31] R. 46, 47.

[32] R. 103–04, 133–34.

416.913a(b)(1). Thus, the ALJ was entitled to rely on their findings to determine that Dr. Drake's opinion was unpersuasive.

### 2. RNs McIntosh and Villar-Leeman

Plaintiff also asserts the ALJ improperly determined that the opinions of RNs McIntosh and Villar-Leeman were not persuasive. The Court disagrees. Indeed, "[t]he ALJ supportably determined that the opinions of RNs McIntosh and Villar-Leeman were not persuasive because they were not well supported and inconsistent with other substantial evidence."[33] As the Commissioner points out, "RN McIntosh's opinion that Plaintiff had at least serious limitations in performing many mental work-related tasks was not supported by her generally unremarkable treatment records."[34] And "RN Villar-Leeman's opinion that Plaintiff had a poor ability to do many mental work-related tasks was not supported by her generally unremarkable mental status examination findings."[35] Further, as in the case of Dr. Drake, the opinions of RNs McIntosh and Villar-Leeman were not consistent with Plaintiff's work at Lowes and Popeyes.[36] Because their opinions were not well-supported or consistent with other medical and nonmedical evidence in the record, the ALJ properly concluded that these opinions were not persuasive. *See Tibbles*, 2023 WL 3477127, at *2; *Rivers*, 280 F. App'x at 23.

### 3. Dr. Asunto

Next, Plaintiff challenges the ALJ's determination that Dr. Asunto's opinion was unpersuasive. As with the other medical opinions thus far, the Court rejects this argument

[33] ECF No. 23 at 8–9 (citing R. 22, 3409, 3271).

[34] *Id.* at 9 (citing R. 3409, 3512, 3535, 3560, 3572, 3590).

[35] *Id.* (citing R. 3271, 3517, 3580, 3595, 3610).

[36] R. 46, 47.

because it finds the ALJ's determination to be supportable because the ALJ found that Dr. Asunto's opinion was not well supported and not consistent with other substantial evidence.[37] *See Tibbles*, 2023 WL 3477127, at *2; *Rivers*, 280 F. App'x at 23. Specifically, "Dr. Asunto's opinion was not well supported by her unremarkable physical examination findings nor her assessment that Plaintiff could return to work 'with a few restrictions.'"[38] Nor was Dr. Asunto's opinion consistent with "the generally unremarkable physical examination findings of Plaintiff's other medical sources as well as her work at Lowes and Popeyes."[39] Accordingly, the ALJ properly concluded that it was not persuasive.

**4. Dr. Rogers**

Finally, Plaintiff asserts that the ALJ improperly discounted a finding made by Dr. Rogers "that Plaintiff would have occasional discontinuities in persistence and would occasionally distract others."[40] The Commissioner responds that the ALJ supportably discounted this finding, "because it was not consistent with other substantial evidence."[41] The Court agrees with the Commissioner. Dr. Rogers' finding was not consistent either with "Plaintiff's medical sources' observations that her concentration skills were intact," nor with Plaintiff's past work at Lowes and Popeyes.[42] As with the other medical opinions discussed herein, the ALJ properly declined to credit certain conclusions in a medical source's opinion

---

[37] R. 21, 2438, 2439.

[38] ECF No. 23 at 9 (citing R. 1160, 1287, 1311, 1451, 1457).

[39] *Id.* (*comparing* R. 2438, 2439*, with* R. 46, 47, 432, 868, 1206–07, 1704, 2819, 3359).

[40] *Id.* (citing ECF No. 16-1 at 42; R. 22–23, 133).

[41] *Id.* at 9.

[42] *Id.* (citing R. 3517, 3529, 3542, 3580, 3595, 3599, 3606).

that were inconsistent with other evidence of record. *Pellam v. Astrue*, 508 F. App'x 87, 89–90 (2d Cir. 2013) (summary order).

A reviewing court may only reject an ALJ's decision if "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (cleaned up). Here, there is no indication that a reasonable factfinder must—or even should—conclude contrary to the ALJ's evaluations of the medical opinions discussed above. Substantial evidence supports the ALJ's finding that the medical opinions he discounted were inconsistent with other medical opinions in the record or with Plaintiff's own testimony. Accordingly, the Court finds no error in the ALJ's determination that Plaintiff did not qualify for DIB or SSI and rejects Plaintiff's argument that the ALJ failed to properly assess the medical opinions in this matter.

### C. The ALJ's Determination of Plaintiff's RFC is Supported by Substantial Evidence

Finally, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC in light of his alleged failure to give proper consideration to her subjective complaints and the medical opinions in this matter, as discussed above.[43] Though Plaintiff acknowledges that the ALJ's RFC was very detailed, she contends that it was not supported by the record because he didn't complete a function-by-function analysis.[44] The Court disagrees.

The RFC "is what the claimant can still do despite the limitations imposed by h[er] impairment." *Greek v. Colvin*, 802 F.3d 370, 374 n.2 (2d Cir. 2015); *see also* 20 C.F.R.

[43] ECF No. 16-1 at 45.

[44] *Id.* at 46 (the ALJ's RFC "failed to incorporate exertional, manipulative, and even non-exertional factors that are relevant to [Plaintiff]).

§ 416.945(a)(1). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Soc. Sec. Ruling 96-8p, Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (S.S.A. July 2, 1996). Thus, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.*

However, the Second Circuit has established that where an ALJ's analysis of a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, remand is not necessary merely because an explicit function-by-function analysis was not performed. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Further, several courts have held that the function-by-function requirement of SSR 96-8p does not apply to the ALJ. *See Novak v. Astrue*, 2008 WL 2882638, at *3 (S.D.N.Y. July 2008); *Casino-Ortiz v. Astrue*, No. 06-CV-155, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007), *report and recommendation adopted*, 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008) (cleaned up) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce a detailed statement in writing.").

Here, the ALJ found that "[i]n interacting with others, [Plaintiff] has a marked limitation," that she "has some significant limits socializing with others," and that she "requires limited social interaction in the workplace."[45] He then relied on testimony from a vocational

[45] R. 16, 22.

expert, who listed three sample jobs that would comport with this limitation.[46] *See* DICOT 209.587-034 Marker, 1991 WL 671802 (2016); DICOT 239.567-010 Office Helper, 1991 WL 672232 (2016); DICOT 559.687-074 Inspector and Hand Packager, 1991 WL 683797 (2016). The ALJ further acknowledged that the Dictionary of Occupational Titles does not address the level of social interaction required for those occupations, nor does it discuss a sit/stand option or whether light work may be performed while seated. He therefore accepted the vocational expert's testimony that, based on the expert's professional experience, these jobs would accommodate Plaintiff's limitations.[47]

Plaintiff asserts that the "ALJ should have better accounted for [Plaintiff's] social limitations."[48] In limiting Plaintiff to "occasional interaction with supervisors, occasional, non-collaborative, interaction with coworkers, and brief and superficial (no more than 10%) of the workday interacting with the public," she argues, the ALJ effectively permitted Plaintiff to be around people for over three-quarters of the day. By doing so, Plaintiff argues, the ALJ failed to reconcile those restrictions with his own findings that Plaintiff had a marked limitation in interacting with others and significant difficulty socializing. [49]

But courts within this Circuit have repeatedly upheld comparable RFC limitations where the claimant was found to have marked limitations in social functioning. *See Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 166–67 (W.D.N.Y. 2020) (noting that marked limitations in mental functioning "do not mandate a finding of disability, but can be addressed

[46] R. 24.

[47] *Id.*

[48] ECF No. 16-1 at 46.

[49] *Id.*

with additional limitations to a plaintiff's RFC . . ."); *Juliana Marie M. v. Comm'r of Soc. Sec.,* No. 18-CV-1421, 2019 WL 6829044, *10 (N.D.N.Y. Dec. 13, 2019) (finding limitation to work requiring no more than occasional interaction with public and co-workers adequately accounted for marked limitation in social functioning); *Davis v. Comm'r of Soc. Sec*., 17-CV-6804P, 2019 WL 1870814, *4 (W.D.N.Y. Apr. 26, 2019) (finding that the ALJ accounted for Plaintiff's marked limitation in interacting with others by limiting work to occasional interaction with others); *Fiducia v. Comm'r of Soc. Sec*., No. 13-CV-285, 2015 WL 4078192, *4 (N.D.N.Y. July 2, 2015) (finding that a marked social limitation does not establish that the claimant is disabled, particularly because the ALJ limited the claimant to occasional interaction with others).

Thus, in Plaintiff's case, the Court finds the ALJ's limitation on interactions described above sufficient. The Court finds no meaningful distinction between Plaintiff's marked social limitations and those of the claimants in the foregoing cases that would warrant a different RFC determination. Further, Plaintiff does not contend that any of the jobs identified by the ALJ at Step Five, Marker, Office Helper, and Inspector/Hand Packager, require significant interaction with others or interaction at the level she describes, i.e. for over three-fourths of the day. *See* DICOT 209.587-034 Marker, 1991 WL 671802 (2016); DICOT 239.567-010 Office Helper, 1991 WL 672232 (2016); DICOT 559.687-074 Inspector and Hand Packager, 1991 WL 683797 (2016). "The fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers." *Fiducia*, 2015 WL 4078192, at *4.

Accordingly, the Court concludes that the ALJ's RFC determination is supported by substantial evidence. To the extent Plaintiff's challenge to the RFC rests on her arguments that the ALJ improperly evaluated her subjective complaints or improperly weighed the medical opinion evidence, the Court has already rejected those arguments for the reasons discussed above. Nor is the Court persuaded that remand is warranted based on the absence of an explicit function-by-function analysis. As the Second Circuit explained in *Cichocki*, remand is unnecessary where the ALJ's analysis of the claimant's functional limitations "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous." 729 F.3d at 177. That is the case here. The ALJ adequately explained the functional limitations supported by the record, and the Court is able to meaningfully review the RFC determination. Plaintiff has therefore failed to establish any reversible error in the ALJ's RFC assessment.

## IV. CONCLUSION

For these reasons, the Court **grants** the Commissioner's motion to affirm (ECF No. 23) and **denies** Plaintiff's motion to reverse or remand (ECF No. 16). The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
August 21, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge